Magistrate Judge S. Kate Vaughan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>CHERIAN ABRAHAM,<br><br>Defendant. | NO.   MJ25-149<br><br>COMPLAINT for VIOLATION<br><br>Title 18, United States Code, Section 2244(b)<br><br>Title 49, United States Code, Section 46506(1) |

BEFORE, S. Kate Vaughan, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant, Araceli Lopez Padilla, a Special Agent for the Federal Bureau of Investigation, being duly sworn states:

## COUNT 1
**(Abusive Sexual Contact)**

On or about March 18, 2025, within the special aircraft jurisdiction of the United States, that is, while aboard an aircraft in flight traveling nonstop from Chicago, Illinois, to SeaTac, King County, Washington, within the Western District of Washington, and elsewhere, CHERIAN ABRAHAM did knowingly and intentionally engage in sexual

Complaint - 1
*United States v. Abraham*
USAO No. 2025R00391

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

contact with Victim 1, that is, touch Victim 1's breast, without Victim 1's permission and with the intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of any person.

All in violation of Title 18, United States Code, Section 2244(b) and Title 49 United States Code, Section 46506(1).

And the complainant states that this Complaint is based on the following information:

I, Araceli Lopez Padilla, being first duly sworn on oath, depose and say:

## INTRODUCTION

1. I am employed as a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been employed as a Special Agent with the FBI since 2024. I am currently assigned to the Seattle Field Division where I am a member of the violent crime and gang and Transnational Organized Crime – Western Hemisphere squad. I am currently designated as an Airport Liaison Agent (ALA) for violent crime for the SeaTac International Airport (SEA). Per United States Code, Title 49, Section 46506, Special Aircraft Jurisdiction of the United States, the FBI has been designated as the law enforcement agency responsible for investigating crimes that occur onboard an aircraft once the doors have closed, post boarding, including interference with a flight crew, or any physical or sexual assault. As a Special Agent, I have been involved in numerous investigations regarding sexual assault onboard aircrafts and have conducted numerous interviews of subjects, witnesses, and victims.

2. I am a graduate of the Federal Bureau of Investigation Basic Field Training Course. I have received over 400 hours of investigative and legal classroom training which has provided me the ability to investigate numerous crimes. My training has also provided me with the ability to interview and interrogate individuals during investigations. Prior to becoming a Special Agent with the FBI, I was employed by the FBI as an Electronic Operations Technician since 2021 and assisted in numerous

Complaint - 2  
*United States v. Abraham*  
USAO No. 2025R00391

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

investigations in various capacities, including but not limited to, execution of search warrants, collecting and documenting evidence, and monitoring TIII investigations.

3. I am an investigative law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). As such, I am empowered to investigate, and to make arrests for, violations of federal criminal statutes, including those found in Title 18 and 49 of the United States Code.

4. This affidavit is made based upon my personal knowledge, training, experience and investigation, as well as upon information provided to me and my review of reports prepared by other law enforcement personnel. This affidavit is made for the purpose of establishing probable cause for this Complaint and thus does not include each and every fact known to me concerning this investigation.

## SUMMARY OF PROBABLE CAUSE

5. I have reviewed reports, documents, and statements related to events that occurred on March 18, 2025, aboard American Air Lines flight 2076. According to the reports, documents, and statements I reviewed, American Air Lines flight 2076 left Chicago, Illinois en route to SeaTac, Washington, within the Western District of Washington on March 18, 2025. The flight was nonstop, departing Chicago at 8:27 pm and arriving in SeaTac at 10:56 pm.

6. Based upon a later law enforcement interview of Victim 1, whose full name is known to me but not included here because this is a public filing, Victim 1, who is 22 years old, boarded flight 2076 and took her seat in 20B. Victim 1 sat in the middle seat next to the left of ABRAHAM, who is 55 years old, and sat in 20A, which was a window seat. On Victim 1's left side in the aisle seat was Witness 1, whose full name is known to me but not included here because this is a public filing.

7. Victim 1 told investigators that approximately two and a half hours after departure, ABRAHAM put his finger on Victim 1's breast, overtop of her clothing, and continued to make a rubbing motion with his finger. ABRAHAM did so under the guise

Complaint - 3
*United States v. Abraham*
USAO No. 22025R00391

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of trying to reach his baggage and Victim 1 thought to herself that perhaps this physical touching was accidental.

8. Approximately five minutes later, as Victim 1 continued to watch an inflight movie, she observed ABRAHAM's hand moving underneath her arm and continuing upward toward her breast. Victim 1 reported feeling scared. ABRAHAM's hand continued onto her breast, overtop her clothing, and the motions of his hand suggested to her that he was attempting to locate her nipple. This interaction lasted approximately 20 seconds and ended after the victim looked at ABRAHAM and ABRAHAM withdrew his hand.

9. Approximately five minutes later, ABRAHAM again moved his hand underneath Victim 1's arm and once she felt his finger poke her. Victim 1 feared that ABRAHAM was going to again touch her breast and decided to address him, stating "Why the fuck are you touching me?" ABRAHAM provided no verbal response to her question. ABRAHAM then reached down underneath the seat in front of him to grab what appeared to be a black backpack and proceeded to place it on his lap. Victim 1 got out of her seat and proceeded to locate a flight attendant to report the incident. After reporting the incident to the flight attendant, Victim 1 was moved seats and had no further interactions with ABRAHAM. Victim 1 reported feeling sad, hurt, and unsafe. Victim 1 stated that this was traumatizing for her. At no time did Victim 1 give ABRAHAM permission or consent to touch her.

10. Witness 1 told investigators that approximately halfway through the flight, Witness 1 was woken up by Victim 1. Victim 1 told Witness 1 that she, Victim 1, needed to get up because the man sitting next to her was molesting her. Witness 1 reported being asleep for most of the flight and did not recall any interactions between Victim 1 and ABRAHAM. Witness 1 observed that, when she was awake, ABRAHAM had his bag in between his legs, which she thought to be unusual.

Complaint - 4
*United States v. Abraham*
USAO No. 2025R00391

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  11. Flight Attendant 1, whose full name is known to me but not included here because this is a public filing, reported being told by Victim 1 that a male passenger had grabbed her "titties" with his hands. Flight Attendant 1 was assured by Victim 1 that the touching was not accidental. Flight Attendant 1 moved Victim 1 to another seat.

12. Investigators interviewed ABRAHAM. ABRAHAM was informed that the passenger seated next to him, Victim 1, made allegations of him touching her. After being read and waiving his rights, ABRAHAM denied having touched Victim 1. When advised of the possibility of a witness, ABRAHAM stated he may have touched Victim 1 accidentally while lifting his backpack from underneath the seat. ABRAHAM stated he was told by Victim 1 to stop touching her. ABRAHAM reported being confused when told to stop touching her. As Victim 1 got out of her seat, ABRAHAM touched her shoulder to clarify what she meant. ABRAHAM reported never having been previously accused of anything similar.

13. On April 24, 2024, Victim 2, whose full name is known to me but not included here because this is a public filing, submitted an online complaint to American Airline Customer Relations regarding having been inappropriately touched by ABRAHAM. Victim 2 reported being violated by ABRAHAM, who was seated in the window seat. Victim 2 reportedABRAHAM having rubbed his arm against her side several times. Victim 2 initially thought that maybe this unwanted touching was accidental. Shortly after, ABRAHAM placed his hand in between Victim 2's legs. Victim 2 yelled at him to stop. As a response to Victim 2 yelling at him to stop, ABRAHAM threw his hands up, as if confused. Victim 2 stated feeling stunned and did not know what to do. Victim 2 stated that she tried to discreetly notify a flight attendant but was unsuccessful and sat the remainder of the flight seated next to ABRAHAM.

14. On October 9, 2023, Minneapolis Airport Police spoke with Victim 3, whose full name is known to me but not included here because this is a public filing, regarding inappropriate touching. Victim 3 was seated in the aisle seat, the middle seat

Complaint - 5
*United States v. Abraham*
USAO No. 2025R00391

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

was empty, and the window seat was occupied by ABRAHAM. Victim 3 reported that ABRAHAM began touching her seatbelt. ABRAHAM then touched her left leg and or thigh with an open hand approximately three times. Victim 3 looked at ABRAHAM and told him to stop. Victim 3 got up and proceeded to locate a flight attendant and reported the incident. Victim 3 was relocated to a different seat. Victim 3 did not want to pursue charges. When interviewed by Minneapolis Airport Police Department, ABRAHAM denied having such physical contact with Victim 3.

## CONCLUSION

15. Based on the aforementioned facts, I respectfully submit that there is probable cause to believe that ABRAHAM committed the offense of Abusive Sexual Contact, in violation of Title 18, United States Code, Section 2244(b) and Title 49, United States Code, Section 46506(1).

ARACELI LOPEZ PADILLA
Digitally signed by ARACELI LOPEZ PADILLA
Date: 2025.03.20 11:14:50 -07'00'

ARACELI LOPEZ PADILLA, Complainant
Special Agent, FBI

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

Dated this 21st day of March 2025.

The Honorable S. Kate Vaughan
United States Magistrate Judge

Complaint - 6
United States v. Abraham
USAO No. 2025R00391

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970